FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RACHEAL B., | No. 4:18-cv-05046-MKD |
|                 Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S |
|    vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND DENYING |
| COMMISSIONER OF SOCIAL | DEFENDANT'S MOTION FOR |
| SECURITY, | SUMMARY JUDGMENT |
|               Defendant. | |
| | ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 16, and denies Defendant's Motion, ECF No. 17.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

ORDER - 4

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 7, 2014, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging an onset date of January 1, 1993. Tr. 185-94. The application was denied initially, Tr. 95-98, and on reconsideration, Tr. 102-04. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 10, 2016. Tr. 32-68. On January 30, 2017, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from June 1, 2016 through the date of the hearing, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, anxiety disorder, autism spectrum disorder, and learning disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform work at all exertional levels with the following limitations:

> [Plaintiff] can perform simple, routine tasks and follow short, simple
> instructions, can do work that needs little or no judgment, and can perform

simple duties that can be learned on the job in a short period.  She requires a work environment with minimal supervisor contact.  (Minimal contact does not preclude all contact, rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor.)  [Plaintiff] can work in proximity to co-workers but not in a cooperative or team effort, requires a work environment that is predictable and with few work setting changes, i.e. a few routine and uninvolved tasks according to set procedures, sequence, or pace with little opportunity for diversion or interruption.  She can perform goal-oriented work (i.e. given task expectations) but not production rate pace work and requires a work environment without public contact.

Tr. 21.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as prep cook, laundry worker, and marking clerk.  Tr. 26-27.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, since January 7, 2014, the date the application was filed.  Tr. 27.

On February 2, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 16. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly determined Plaintiff's RFC; and

4. Whether the ALJ properly identified other work in the national economy consistent with Plaintiff's RFC at step five.

ECF No. 16 at 4.

**ANALYSIS**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 16 at 12-13.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment she alleged. Tr. 22. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his

day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

The ALJ found Plaintiff's ability to work full-time as a cashier was inconsistent with her alleged limitations. Tr. 22. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). The ALJ observed that Plaintiff worked at substantial gainful activity (SGA) levels as a cashier for several months prior to the hearing date. Tr. 22. On this record, the ALJ reasonably concluded that this activity was inconsistent with Plaintiff's allegation of complete disability.[1] *Id.*

_____

[1] However, the Court notes that Plaintiff's counsel indicated at the hearing that Plaintiff may not have been able to sustain employment after the hearing date. Tr. 66. Because this case is remanded for further proceedings on other grounds, the ALJ is instructed to develop the record on this issue to assess whether Plaintiff's employment as a cashier was an unsuccessful work attempt.

ORDER - 11

The ALJ also found Plaintiff's academic performance was inconsistent with her reported symptoms. Tr. 22. An ALJ may consider good academic performance as an activity that is inconsistent with a claimant's reported functioning. *See Anderson v. Astrue*, No. 09-CV-220-JPH, 2010 WL 2854241, at *6 (E.D. Wash. July 19, 2010); *Payton v. Comm'r of Soc. Sec.*, No. CIV S-09-0879-CMK, 2010 WL 3835732, at *10 (E.D. Cal. Sept. 29, 2010); *see also Spittle v. Astrue*, No. 3:11-CV-00711-AA, 2012 WL 4508003, at *3 (D. Or. Sept. 25, 2012). Here, the ALJ observed Plaintiff attended community college during the relevant period and maintained a cumulative 3.3 GPA. Tr. 22; *see* Tr. 259-60. However, the ALJ disregarded without discussion Plaintiff's report that she received academic accommodations in college. Tr. 22. Plaintiff testified that she first attempted community college in 2002 without accommodations and did poorly. Tr. 41-42. Plaintiff then testified that she later returned to community college, with accommodations in the form of note taking assistance and video instruction, and that her academic performance improved.[2] *Id.* These accommodations are consistent with Plaintiff's symptom allegations, including becoming overwhelmed easily, difficulty paying attention, and difficulty keeping

---

[2] In fact, Plaintiff's transcript reflects a dramatic improvement in her grades between her enrollment in 2002-04 and her enrollment in 2009-12. Tr. 259-60.

ORDER - 12

pace. Tr. 47-48. The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). In relying on Plaintiff's record of academic successes without acknowledging or discussing the nature of the accommodations Plaintiff received, the ALJ's discussion of Plaintiff's academic record was impermissibly selective. This finding is not supported by substantial evidence.

The Commissioner asserts any error the ALJ made is harmless. ECF No. 17 at 11-12. The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). Here, although the ALJ made a finding about Plaintiff's academic performance as a daily activity that was not supported by substantial evidence, the ALJ also made a separate finding about Plaintiff's work as a daily activity that is supported by substantial evidence. However, as discussed *infra*, the ALJ also failed to identify substantial evidence to support the ALJ's other findings regarding Plaintiff's symptom testimony. Overall, the ALJ's evaluation of Plaintiff's symptom complaints is not supported by substantial

evidence. On remand, the ALJ is instructed to reconsider Plaintiff's symptom testimony.

### 2. *Lack of Supporting Medical Evidence*

The ALJ found Plaintiff's symptom complaints were not supported by the medical evidence. Tr. 23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011).

Plaintiff failed to challenge the ALJ's finding of a lack of supporting medical evidence in her opening brief. ECF No. 16 at 12-13; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, the Court conducted an independent review of the ALJ's decision to determine whether the ALJ's error in assessing Plaintiff's daily activities was

harmless to the overall symptom testimony evaluation and concludes this additional reason is not supported by substantial evidence. Here, the ALJ found that Plaintiff's treatment notes documented appropriate mood and affect and no abnormal psychiatric symptoms. Tr. 23 (citing Tr. 746, 879, 885, 890, 894). However, the ALJ's opinion fails to make any effort to discuss the longitudinal medical evidence. Tr. 18-26. The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Identifying a handful of treatment notes in a record of nearly 950 pages fails to rise to the level of substantial evidence to support the ALJ's finding. Even if Plaintiff failed to specifically challenge this finding, this error compounds the error Plaintiff identified *supra* and should be reconsidered on remand.

### 3. Symptom Improvement

The ALJ found Plaintiff's symptom allegations were inconsistent with evidence that her psychiatric symptoms improved. Tr. 22-23. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Plaintiff failed to challenge the ALJ's finding of symptom improvement in her opening brief. ECF No. 16 at 12-13; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. However, the Court conducted an independent review to determine whether the ALJ's error in assessing daily activities was harmless to the overall symptom testimony evaluation and concludes this additional reason is not supported by substantial evidence. Here, the ALJ observed that Plaintiff's depression score, as measured by the QIDS-SR16, dropped from a 15 in February 2016 to an 11 in October 2016, meeting Plaintiff's goal. Tr. 22; *see* Tr. 924. One instance of improvement in Plaintiff's depression score does not rise to the level of substantial improvement to support the ALJ's finding. Even if Plaintiff failed to specifically challenge this finding, this error compounds the error Plaintiff identified *supra* and should be reconsidered on remand.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Nora Marks, Ph.D., and Christmas Covell, Ph.D. ECF No. 16 at 8-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan,* 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

*1. Dr. Marks*

Dr. Marks examined[3] Plaintiff on December 11, 2013; diagnosed Plaintiff with depression, Asperger's disorder, and learning disorder; and opined Plaintiff had moderate limitation in her ability to understand, remember, and persist in tasks by following detailed instructions; moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; moderate impairment in her ability to make simple work-related decisions; moderate impairment in her ability to ask simple questions or request assistance; moderate limitation in her ability to maintain appropriate behavior in a work setting; marked limitation in her ability to learn new tasks; marked limitation in her ability to communicate and perform effectively in a work setting; marked limitation in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms; severe limitations in her ability to adapt to changes in a routine work

_____

[3] Plaintiff's brief characterizes Dr. Marks as a treating source. ECF No. 16 at 9-11. However, the Court finds no evidence in the record to indicate Dr. Marks had any ongoing treatment relationship with Plaintiff. Additionally, Dr. Marks signed both of her reports as the "examining professional." Tr. 375, 758. Accordingly, the Court finds Dr. Marks is an examining provider.

ORDER - 18

setting; and severe limitations in her ability to set realistic goals and plan independently.  Tr. 372-75.

Dr. Marks performed a second examination on October 29, 2015; diagnosed Plaintiff with major depressive disorder, learning disorder NOS, anxiety disorder NOS, and autism spectrum disorder; and opined Plaintiff had moderate limitation in her ability to maintain appropriate behavior in a work setting; marked limitation in her ability to understand, remember, and persist in tasks by following detailed instructions; marked limitation in her ability to learn new tasks; marked limitation in her ability to adapt to changes in a routine work setting; marked limitation in her ability to make simple work-related decisions; severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; severe limitation in her ability to adapt to changes in a routine work setting; severe limitation in her ability to be aware of normal hazards and take appropriate precautions; severe limitation in her ability to ask simple questions or request assistance; severe limitation in her ability to communicate and perform effectively in a work setting; severe limitation in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms; and severe limitation in her ability to set realistic goals and plan independently.  Tr. 755-58.  The ALJ gave these opinions little to no weight.  Tr. 24.  Because Dr. Marks' opinions were contradicted by Dr.

Eather, Tr. 80-81, and Dr. Fligstein, Tr. 90-92, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Marks' opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Marks' opinions were not sufficiently explained. Tr. 24. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

Here, the ALJ concluded that Dr. Marks "simply checked boxes" identifying limitations and "provides no discussion [of] the basis or support for these suggested limitations." Tr. 24. However, the ALJ's conclusion completely disregards the narrative explanation contained throughout Dr. Marks' two reports. Dr. Marks administered objective testing during both examinations, and each

report contains a description of her test results and their implications for Plaintiff's functioning.  Tr. 373, 756-57.  Each report also contains an itemized list of diagnoses and an explanation of the specific impact each diagnosis has on Plaintiff's functioning.  Tr. 373-74, 757.  Absent discussion of her narrative report, the ALJ's conclusion that Dr. Marks' reports were not sufficiently explained is not supported by substantial evidence.

Second, the ALJ found that Dr. Marks' opinions were inconsistent with the longitudinal medical evidence.  Tr. 24.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  However, the ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.  *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Here, the ALJ found that Dr. Marks' opinions were inconsistent with Plaintiff's normal psychiatric presentations during appointments and evidence that her mental health symptoms improved over time. Tr. 24. The ALJ identified a series of treatment notes in which Plaintiff was observed to have appropriate mood and affect and no abnormal psychiatric symptoms. Tr. 23 (citing Tr. 746, 879, 885, 890, 894). To support the conclusion that Plaintiff's symptoms improved, the ALJ cited evidence that Plaintiff's depression score, as measured by the QIDS-SR16, dropped from a 15 in February 2016 to an 11 in October 2016, and one report from Plaintiff's father that Plaintiff was "extremely happy." Tr. 22; *see* Tr. 295, 924. This cursory discussion of the medical evidence, identifying one change in depression score, one report from Plaintiff's father about her mood, and a handful of physical examinations where no psychiatric abnormalities were observed, in a record of nearly 950 pages, does not rise to the level of substantial evidence to support the ALJ's finding. In light of the significant limitations Dr. Marks opined stemming from Plaintiff's Asperger's disorder/autism spectrum disorder and learning disorder, which the ALJ did not address, the ALJ's conclusion that Dr. Marks' opinion was not consistent with the medical evidence is not supported by substantial evidence.

Third, the ALJ found that Dr. Marks' opinions were inconsistent with Plaintiff's activities. However, as discussed *supra*, the ALJ made findings

regarding Plaintiff's daily activities that are not supported by substantial evidence. Because the ALJ's other findings regarding Dr. Marks' opinions are similarly unsupported by substantial evidence, the Court declines to specifically analyze this reason here. Overall, the ALJ failed to provide specific and legitimate reason, supported by substantial evidence, to discredit Dr. Marks' opinion. The ALJ applied similarly flawed analysis to reject the opinions of other medical providers in the record. Tr. 24-25. Accordingly, the ALJ is instructed to reconsider the all of the medical opinion evidence on remand.[4]

**C. RFC Formulation**

Plaintiff challenges the ALJ's RFC formulation for failing to capture the full extent of Plaintiff's limitations. ECF No. 16 at 13-15. Plaintiff also challenges the ALJ's RFC formulation for not being based in credited medical evidence. *Id.* at 8.

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In assessing whether a claimant is capable of performing work available in the national

_____

[4] The Court therefore declines to address Plaintiff's specific assignments of error regarding Dr. Covell's opinion.

ORDER - 23

economy, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. Here, because the ALJ committed harmful error in weighing the evidence, the ALJ's hypothetical to the vocational expert was improper. On remand, the ALJ is instructed to conduct a new sequential evaluation and formulate a new RFC based on a proper evaluation of the evidence.

**D. Step Five**

Plaintiff raises additional challenges to the ALJ's findings at step five regarding other work in the national economy. ECF No. 16 at 15-16. In light of the Court's findings *supra* and instruction to conduct a new sequential analysis on remand, the Court declines to address Plaintiff's step five arguments.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 16.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary to properly evaluate the medical opinion evidence, including consultation with a medical expert. Furthermore, even if all three credit-as-true prongs were met, remand for further proceedings would still be appropriate because Plaintiff's ability to work at SGA levels for five months prior to the hearing raises serious doubt that Plaintiff is, in fact, disabled. Therefore, this case is remanded for further proceedings. The ALJ is instructed to take testimony from a medical expert, reweigh the medical evidence, reweigh Plaintiff's symptom allegations, and conduct a new sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, and **CLOSE THE FILE**.

3        DATED March 25, 2019.

4                           *s/Mary K. Dimke*
                         MARY K. DIMKE
5              UNITED STATES MAGISTRATE JUDGE

ORDER - 27